Jeff Price representing the appellant. I'd like to reserve four minutes for rebuttal. We are here today because in 2004 in Men's Central Jail, the appellant was thrashed and beaten by numerous deputies while he was a pretrial detainee. I would first like to address the jury instruction issue because it is dispositive of the case. This court has on several occasions addressed the proper standard that should be used in an excessive force case involving a pretrial detainee. It is undisputed that Mr. Young was a pretrial detainee at the time. The jury instruction that was used in this case by the district court was the 8th Amendment convicted prisoner jury instruction. But it should have been the 14th Amendment, but as I read Frost, there's really no difference between the instructions given under the 14th Amendment as given under the 8th Amendment. How do you explain that? It should have been the 4th Amendment, not the 14th Amendment. Why the 4th Amendment? He's a pretrial detainee post-arraignment. The 4th Amendment doesn't get any more, does it? Yes, it does. What case do you have that says that? Numerous cases, Gibson v. Washoe County, and recently in 2011, the Sacramento case, which was cited in the reply brief. When does it become a 14th Amendment issue? It's always going to be a 4th Amendment issue. I do not believe that there is a 14th Amendment standard in this kind of a case, and this court has stated in several different opinions. What about Pierce? I mean, do I read that wrong? Doesn't that stay after the proposition that it's substantive due process that kicks in post-arraignment? Am I reading that wrong? There are many statements in Pierce that can be interpreted in different ways. I do have to say that the cases in the circuit are not absolutely clear in their application of this issue. Why is Pierce not clear as far as that particular issue? What is there about Pierce that's not clear about that? It's my understanding that Pierce does not say in black and white that the 14th Amendment applies. How about Frost? Do you know Frost v. Agnew? Frost? Yeah, where the court said, claimed by pretrial detainees are analyzed under the 14th Amendment due process clause rather than under the 8th Amendment. Because the rights under the 14th are comparable to prisoners' rights under the 8th Amendment, however, we apply the same standards. How about that? That seems kind of on point. That is a misstatement. There are numerous other cases such as Gibson v. Washoe County. There's the Ninth Circuit jury instruction 9.22. There's the recent case that just came down. So your point is the Ninth Circuit is confused and the Ninth Circuit, just when it says we do it under the 8th Amendment, is just plain wrong. Not that there's no authority for it and that all the authorities are to the contrary, and therefore the district court was obviously fouled up in that respect. True? Okay. The 8th Amendment standard, the Whitley v. Albers standard, which was given in this case, is absolutely wrong. Well, I hear you keep saying that, but the point is that's not really answering what I was trying to ask you. You're saying whenever the Ninth Circuit has said the contrary, it's just wrong. Correct? Isn't that your point? You can make that point. Sometimes we make mistakes. Well, I indicated before, Your Honor, that there is not an absolutely clear line of authority in this area. But if there is a case such as Frost that states that the 14th Amendment applies, yes, that is wrong. Okay. So what are we supposed to do with that? And in fact, the U.S. Supreme Court recently analyzed a pretrial detainee case in Florence v. Board of Chosen Freeholders on April 2, 2012, under a Fourth Amendment standard. And to get to Judge Block's point, in any event, the 14th Amendment standard, if there were one, and the 8th Amendment standard would not be coterminous. The 14th Amendment standard would not be the same as the 8th Amendment standard. That doesn't make any sense. That flies in the face of Ingram v. Wright and all of the cases after Ingram v. Wright, going up to Gibson, Graham v. Conner, which state that only when the state has convicted someone through a criminal process by the dictates of due process can the 8th Amendment then apply. So it would make no sense to say that the 14th Amendment standard would be identical to the 8th Amendment standard. Suppose your guy had already been convicted. Okay? Hypothetical question.  Could these guards have done anything differently? Could they still have beaten him up? Then the standard that the jury instruction that was given in this case probably would have been correct. They still couldn't do what they did. I don't think they could have done what they did, but I haven't analyzed that because he wasn't a convict. It's not open season on convicted defendants, right? They don't have the right to beat him up and break his rib whether he's convicted or not. No, it's not, but the standard is much, much higher. There is a malicious and sadistic element that must be proven in those cases. I sort of wonder how you run a jail. Before guards, there's an incident outside the shower. They have to go look up his arraignment date. What do you think they need to do to know how to quell it? I think they need to stop beating inmates. That's what I just said. There's really no difference whether he's convicted or not convicted. There's a gray area in jails where there are convicted people who are serving time around people who are pretrial detainees. Look, there are two kinds of pretrial detainees. There are pre-arraignment pretrial detainees and there are post-arraignment pretrial detainees. Those folks, the post-arraignment, they might be sitting in our local jails for three years or four years while a case winds its way through the superior court. We know that, at least in death cases, they go on for ages before they ever get to trial, for example. Now, if one is trying to say, how do you run a jail, why would one say that you treat people who are there long-term and are doing X? If a convicted person does X, then you can take steps against them. You can punish them in that sense. It doesn't mean you can beat them up. If a post-arraignment detainee does X, then you would say, no, you can't put them in solitary or punish them or do something to preclude this problem in the jail. That would be your position, right? Yes, but I don't put a lot of importance on the Rubicon line of arraignment. There are thousands of people who are in L.A. County Jail right now who are presumed innocent. There are people who have been in L.A. County Jail for years who were acquitted or who were released from custody because witness testimony has been suppressed. So those people are innocent until proven guilty. I'd like to ask you, if I may, about the witnesses who didn't come to court. What's the story on that? The story on that is that the county defendants knew that those witnesses were in their jail. I personally visited both witnesses the weekend before the trial. Was the writ of habeas corpus, that test of a condom, issued? Yes, it was issued. And it was directed to the Department of Corrections? It was directed to a warden of the institution. Okay, not to the county jail. Right, but the county jail executed the writs. No, no, no, no, no, no. This writ issued to the Department of Corrections. The writ said to the Department of Corrections, You warden so-and-so in Bumblebee State Prison. You bring this guy to court on a given day, right? Yes. Okay. Then, I guess the day before the given day, they check him into the county jail overnight, right? No, Your Honor. They were picked up by the Sheriff's Department. The Sheriff's Department has a bus. They went to go get him? They picked these inmates up on their circuit. So the Sheriff's Department took custody of the inmates. How could they take custody of the inmates? Only one way, pursuant to a writ. Okay, now you get the writ. It's still directed to the Department of Corrections. Come the day of trial, no one brings them over from the jail to the courthouse, right? Right. What was done about that? I filed an extraordinary writ petition in this court, which was denied during trial. I kept telling the judge. I told him on the first day that my witnesses were not there. I told him on the second day that my witnesses were not there. I wasted hours and hours calling. I'm sympathetic to the problem that the guy's across the street and they're not over here. I'm just trying to figure out who's the culprit here. The writ didn't tell the Sheriff to do anything, as far as I can tell. Your Honor, the Sheriff... The writ didn't tell the marshal to do anything. The Sheriff assumed the responsibility when they took those witnesses out of state prison. Otherwise, that would be a kidnapping. When the Sheriff went up there and took those... That's a pretty bizarre argument, but it sounds to me like you have a legitimate gripe that the Department of Corrections didn't deliver the people to the courtroom. I don't know. We have to get into a kidnapping theory, but it sounds like your order said bring them to court on a given day, and they didn't bring them on a given day. Is that true? They never brought them to court. Then when you say to the judge, Judge, your order telling them to bring them to court on a given day hasn't been obeyed. The judge tells you to go take a hike, basically. The judge did make a couple phone calls. He said he verified that the marshals would not do anything about it. Because they're not federal prisoners. That makes sense. But, you know, the marshals do bring... Well, never mind. Yes, nothing was done, and the witnesses never arrived in court. What did the judge try to call, do you know? I believe the judge called the marshals. Okay. I do not believe he correctly called... The marshal says, hey, these are not federal people. That's not our problem, basically. Logically, you'd think that. He told me at one point that it was my responsibility. Did you ever ask for an OSC rate contempt directed to the warden? No, but, Your Honor, I did attempt to make an offer of proof, which the judge did not allow me to make. You also said, if the witnesses don't get here, I'm going to make a motion for mistrial. And the judge says, well, you make your motion for mistrial at the end of the case. And I don't, at least looking at the record, I don't see that you did. When the case was submitted, there wasn't a motion for mistrial made at that point, if I understand correctly. I believe I did actually make a motion for a mistrial. At one point, the judge said that, well, that's anticipatory, that's anticipatory. Exactly. That's what he said. I'm not asking about that one. I saw that one. You're saying the transcript shows that when everybody rested, you then made that motion for mistrial? I don't know if it's when everyone rested. I believe I made it at one point where I believed that I had to make that motion. You made the motion when they were not produced. You didn't make it a second time or a third time. You just made it once you thought that was sufficient. Yes. Even though the case wasn't over yet. And I think the district judge, at the point I recall anyway, said, well, if you say they're in line to be transported, whatever that means, they're in line to be transported, it's too early. Let's wait until the case is over and then make your motion. At one point, the judge said that he was, that I was going to be, my case was going to be rested whether or not those inmates arrived. And I kept telling the court that I was having, I was really getting nowhere with getting the witnesses there. I believe the record was entirely clear that I, I mean, I even filed an extraordinary writ in this case, in this court. You're out of time. Thank you, Mr. Price. Thank you. Good morning. How does it work? Well, let me get your name. You may have placed the court. I'm Christian Nagy of Collins Collins. Mary Stewart on behalf of Appellees Wolf, Ochoa Smith and Martinez. Explain to me how it works. I know how things work in Brooklyn, but, you know, maybe we're just unique there. But, you know, it's not uncommon for, you know, writs to be issued by judges to the warden of the prison, which is housing federal defendants. And we do that all the time. And then it's the responsibility of the warden to obey our writ. And isn't that what happened here? The writs were issued to the wardens of the respective state correctional facilities. There's nothing wrong with that, was there? No. The wardens were tasked. They were the persons who were compelled by the writ to bring these prisoners to court. They didn't do it, though. Whether the sheriffs were an intermediate custodian or they simply had the jail facility downtown at which these prisoners were going to be housed temporarily on the way to court, the appellant never asked or never applied for a second writ directed to the sheriffs. Why should he do it? Isn't one writ enough? I mean, it is to the warden. The warden has the responsibility to see to it that the writ is complied with. The warden can designate whoever it wants to bring the people to court. What difference does it make whether it's the sheriff or you or me or Judge Silverman? It's the warden's responsibility. He didn't live up to his responsibility. What do I miss here? Well, if it's the warden's responsibility, then yes, he didn't live up to his responsibility. But the judge is acting under a discretionary standard. Okay, what discretion? What possible reason would a judge have to say, I issued a writ telling the warden to bring the witnesses to court and they didn't do it? That's just tough luck. I'm not going to do anything about it. I think this particular court was extremely indulgent of all of the various jurisdictional issues and went out of his way. Let's get back to my question. What reason would a judge have to say, when the warden doesn't bring the guy to court, I'm not going to do anything to make the warden bring him to court and they lose their eyewitnesses? What justification would there be for that? The court doesn't have any residual powers to issue further orders to enforce a writ. Of course it does. Have you ever heard of contempt? You mean the warden can contemptuously refuse to follow a federal habeas writ? Since when is that true? The court has the ability with respect to contempt. So the court has no authority. He's issued a writ to the warden and then it's up to somebody off in Never Never Land, you know, contact the Wizard of Oz and see if he'll do it? I don't understand that point. I mean, counsel might have fouled up some way. I don't know. I'm not saying he did or did not. But I don't understand your point. Oh, well, it's just too bad. Why wouldn't a judge enforce his own order? I can't speak to why this particular judge didn't do it, but he... But the point is, if he doesn't do it, and therefore... I don't think it was an abuse of discretion. It wasn't outside the bounds of reason for him to say, look, I issued the writ. Abuse of discretion? These were key witnesses. They were the only people who actually witnessed the incident from what I see in the record. It's not as if there are some incidental people out there. I mean, these were critical witnesses. In fact, if I read this correctly, it was the reason why he was acquitted, because of the testimony of one of these eyewitnesses. I mean, how much more fundamental and basic and fair can one be? Well, the judge's position was that it was appellant's responsibility to perfect his writ. And it wasn't at all clear that the... What was he supposed to do? He was supposed to pay fees. He was supposed to see that... Where in the record is he supposed to pay any fee? Well, the court says, it tells him, well, there's these things that you have to do. Yeah, he says there is no fee. Where in the record is there any fee that he's supposed to pay? Well, I don't know that. Neither does anybody else. I mean, as far as I can tell, there's no fee. He did everything he has to do to get these people there. You know, it's not like the situation where in the middle of trial, I handle a lot of trials, I guess, right, where somebody says, oh, we want a writ, you know, and the trial is about ready to end, and the judge says, well, look, it's kind of too late. You know, we've had the jury here for three weeks. I'm not going to grant a continuance. You may be dealing with a discretionary issue, perhaps, in that context. But the lawyer did everything in advance here. He could not have done more except ask three or four or five more times through the course of the trial for a mistrial. You know, and I don't know what else he could have done. I just don't think under the circumstances, though, the judge abused his discretion. He made phone calls. He made suggestions. He said, counsel, this is really, this very well may be a jurisdictional issue that the court can't resolve. Enforce his own writ is really what happened. Ultimately, he did not issue contempt orders or an OIC writ contempt. Get away with that in Brooklyn. I don't know how life is out here. By the way, do you have any idea, and maybe I should ask opposing counselors, but I'm just kind of curious, on that last day of trial, counsel said, well, they told me at the county jail that this guy is, I forget what they call it, the bus line for transportation to the court. But I guess the person never got to the court. Do you have any idea what happens and what that means? He's in the bus line for transport to the court? I don't know. I don't know. It does appear that there was an administrative problem. I don't know what that problem was. But the court's position was that this was an issue for the appellant to have worked out and he had a month to do it. What about this malicious prosecution issue? Somebody's judgment was granted. And I'm just curious about this. It seems like good time, there's no question that that's a liberty right. Is there an issue about that? Well, it's a state-created liberty interest. Entitled to good time under state law, right? Yes, under certain sentencing schemes. So you wouldn't be entitled to work time credit as a right. Is there any question here he would be entitled to good time as a matter of law? I believe under Penal Code 4019 he has a substantive due process, a state-created liberty right in his good time custody credits. But that doesn't prove it. Somebody's judgment had been granted here if that's the case. Well, substantive due process doesn't provide the constitutional hook for purposes of malicious prosecution action. It's one of the elements, though, for malicious prosecution under the federal standard, is it not? Well, it's a Fourth Amendment liberty interest. That's at issue. But in Albright v. Oliver, the Supreme Court says substantive due process doesn't provide that constitutional peg for malicious prosecution action. This idea that he didn't suffer any harm because he would have been incarcerated anyway, that's something the judge cooked up on his own, right? That wasn't raised by you or the other side? That was not briefed in the papers, no. Isn't the judge required to give the non-moving party an opportunity to address that before ruling against him on that ground? I believe that if counsel had wanted to address it, he could have brought a motion for reconsideration. That's not the question I asked you, though. Isn't the judge obligated to, before going off on this kind of detour of his own creation, that he say, I see another way to decide this case. It hasn't been briefed. Before I rule against you, I'm going to let you say yea or nay. Typically, yes. Did counsel raise that issue on appeal? Which issue? It does not look to me as if your opponent raised the issue that the judge should not have ruled at all on appeal. I'm sorry, can you repeat that? I'm not sure I understand. In the appellate briefs in our court, was the issue the judge should not have done this at all because he didn't give us notice raised? No, it was not. But in front of the court, in some sense anyway, was the finding by the state courts that he did indeed have that credit, correct? I think you folks submitted it. Yes. There was a motion to amend his sentence at which time he was given the credit following the second prosecution, his acquittal. He did have the credit, and in fact, the state court said he's been held longer than he should have been, correct? Yes, calculating the custody credits, he had been held longer. Is there an issue of fact as to whether or not the judge was wrong in the grant of summary judgment? I mean, could we as a court say that there's no issue of fact, you know, and make that determination? Or would we send it back to the judge to have the judge consider that? The judge found that the testimony of Michael Sutton that had been supplied by the appellant was sufficient to create a dispute of fact as to whether the prosecutor had exercised his independent judgment in filing charges. Is there an issue of fact here? Well, that's what the judge found below, yes. I just wanted to say, do you think that summary judgment on the merits was effectively and properly granted here? Yes, we do. Yes, I do. Because? Because I would say that for the reasons given by the court, that there is no constitutional basis for the malicious prosecution. Do you agree with that? As a matter of fact, is there any factual determination that will be made? No. So we can decide as a matter of fact. As a matter of fact. Let me ask you another question here. If, hypothetically, we believe that the judge's behavior here was just outrageous and not enforcing his writ and just on his own initiative granting summary judgment, what do you think about the providence of sending this case back to a different judge under the circumstances of this case? I don't have an opinion on that, Your Honor. Is Judge Liu still on the bench? I don't know. I don't know the answer to that. Because your adversary did not ask for it. But, you know, sometimes that's a delicate thing to ask for. I can understand that. But we have the separate power. I guess we have the authority on our own initiative to do that if we think it's appropriate. Do you agree with that? Yes, I would agree with that. I would like to address, in the few minutes I have remaining, the court's model juror instruction 15 indicate that it's the correct juror instruction at issue here. Do you agree with your adversary's comment that the Supreme Court recently said that the Fourth Amendment is what applies in post-arraignment pretrial scenarios? I don't think that's what the Supreme Court said, but I'm a little confused about that. I'm not familiar with the Florence case that he's just cited to. But the issue has been addressed by a district court in the Ninth Circuit. I'm concerned about the Supreme Court now. Yeah, I'm not familiar with this case. I don't think that's correct reading of that case, but I'm just wondering what your opinion is. Well, Pierce was pretty clear that the Fourth Amendment ceases to be the applicable standard for excessive force cases once the detainee is arraigned. I think the adversary said something different before. I'm just a little curious. Was the name of that case again? You said what, Florence? Well, I think counsel is required to put in what we call a gum sheet or a slip sheet and is not supposed to be raising cases in front of us where he has not submitted that to you and to us. So at the very least, he should do that if he hasn't. Okay. I think there's adequate precedent to find that the Eighth Amendment and the Fourteenth Amendment are read comparably here for purposes of excessive force. Both Redman and Frost v. Agnos find that to be the case. The Whitley v. Albers case decided by the Supreme Court does compare the standards of offensive conduct for purposes of due process and for purposes of convicted prisoners and says that it would be surprising if conduct that shocks the conscience or affords brutality of the cloak of law, on the one hand, is not also offensive of the Eighth Amendment standards on conduct that's repugnant to moral society. So there's quite a bit of jurisprudence that would hold that this particular jury instruction is appropriate for a Fourteenth Amendment due process case. The balancing test at the very end of this particular jury instruction, and I would add that the district court removed any reference to the Eighth Amendment and drafted it in such a way that it speaks to the constitutional right to be free of excessive force generally. But the balancing test at the end of this jury instruction speaks to the same deference discussed in Bell v. Woolfish that's afforded to prison officials in cases of pretrial detainees, that's afforded to officials in cases of convicted prisoners. So the Fourth Amendment standard of excessive force doesn't admit to that deference, that deferential standard. The actual test at the end of this particular jury instruction is the classic substantive due process test. It was the initial Johnson v. Glick test that the Supreme Court discussed in Graham v. Conner and disapproved for prearrangement pretrial detainee cases. So we would submit to the court that this was the appropriate jury instruction. If there are no more questions, I will submit. Thank you. Judge Block is fighting a cold and needed to step out for a second. I believe Mr. Price is up this time. So the case argued is submitted. Good morning, counsel. Thank you. Thank you. Okay, 10-56287.
judges: Block, Fernandez, Silverman